**VIGEN CONSTRUCTION CO.,**
**Plaintiff and Appellant,**

v.

**MILLERS NATIONAL INSURANCE**
**COMPANY, Defendant**
**and Appellee.**

**Civ. No. 880171.**

Supreme Court of North Dakota.

Feb. 20, 1989.

---

Dickel, Johannson, Taylor & Rust, Crookston, Minn., for plaintiff and appellant; argued by Kenneth F. Johannson, Crookston, Minn.

Nilles, Hansen & Davies, Ltd., Fargo, for defendant and appellee; argued by Daniel J. Crothers, Fargo.

GIERKE, Justice.

Vigen Construction Company [Vigen] appeals from a summary judgment holding that the liability insurance policy issued to Vigen by Millers National Insurance Company [Millers] does not provide coverage for defects in a concrete building constructed by Vigen. We affirm.

Vigen contracted to construct a concrete flour mill in Grand Forks, North Dakota for Minn–Dak Seeds, Ltd. [Minn–Dak]. Vigen contracted with a subcontractor, Porta–Mix Concrete, Inc. [Porta–Mix], to sup-ply concrete for use in the construction of the flour mill. Although the contracts specified use of 3,500 p.s.i. concrete in the walls of the building, an error was made and the concrete actually supplied ranged from 900 p.s.i. to 2,600 p.s.i.

Minn–Dak sued Vigen in district court in Grand Forks County, alleging that the building, although currently operational, is structurally unsound and that, due to the use of less durable concrete, the useful life of the building has been reduced. That claim is currently in arbitration.

Vigen subsequently commenced this declaratory judgment action against its liability insurer, Millers, seeking a declaration that its comprehensive general liability policy provided coverage and that Millers had a duty to defend Vigen in Minn–Dak's action. Vigen and Millers each moved for summary judgment. The trial court granted Millers' motion, holding that the liability policy did not provide coverage for Vigen's failure to properly perform the contract. Vigen has appealed from the resulting summary judgment.

Our review of the trial court's decision in this case is significantly hampered by the brevity and conclusory nature of the trial court's order granting summary judgment. The court did not specifically address the various issues raised by the parties and did not even state whether North Dakota or Minnesota law applied, an issue hotly disputed by the parties. Nor did the court address numerous North Dakota cases almost directly on point which would have to be distinguished or overruled to hold that no coverage existed under North Dakota law.

When we are unable to determine from the record the factual and legal bases for the trial court's ultimate conclusions, our review function cannot be properly performed. *Herzog v. Yuill,* 399 N.W.2d 287, 292 (N.D.1987); *Radspinner v. Charlesworth,* 346 N.W.2d 727, 730 (N.D.1984). Under these circumstances we would normally remand to the trial court for clarification. *See Herzog v. Yuill, supra; Radspinner v. Charlesworth, supra.* In the instant case, however, we are able to reach

the merits because we conclude that, under the undisputed facts and as a matter of law, the trial court should have applied Minnesota law, which would provide no coverage for this occurrence under the liability policy. Thus, we enlist the well-settled rule that a correct judgment will not be set aside merely because the trial court assigned an incorrect reason (or no reason at all) for its decision if the results are the same under applicable reasons. *E.g., Lang v. Bank of Steele*, 415 N.W.2d 787, 790 (N.D.1987).

At issue in this case is whether the standard form contractor's liability policy, and in particular exclusions (a) and (o), provides coverage for breach of warranty and faulty workmanship in performance of the construction contract. Vigen concedes that if Minnesota law is applied the insurance policy must be construed to provide no coverage. *See Knutson Construction Co. v. St. Paul Fire and Marine Insurance Co.*, 396 N.W.2d 229 (Minn.1986); *Bor–Son Building Corp. v. Employers Commercial Union Insurance Co.*, 323 N.W.2d 58 (Minn. 1982). Applying North Dakota law, however, exclusion (a) of the standard form policy has been construed as a grant of coverage for breach of warranty.[1] *See Apollo Sprinkler Co. v. Fire Sprinkler Suppliers & Design, Inc.*, 382 N.W.2d 386 (N.D.1986); *Emcasco Insurance Co. v. L & M Development, Inc.*, 372 N.W.2d 908 (N.D.1985); *Aid Insurance Services, Inc. v. Geiger*, 294 N.W.2d 411 (N.D.1980); *Applegren v. Milbank Mutual Insurance Co.*, 268 N.W.2d 114 (N.D.1978). Thus, the determination of which state's law is to be applied will have a significant impact on the resolution of the case on the merits.

Our decision in *Apollo, supra,* provides the framework for resolving the choice-of-law question in this case. In *Apollo* we employed a "significant contacts" test,[2] taking into consideration the five choice-influencing factors identified by Professor Leflar in his article *Choice–Influencing Considerations in Conflicts Law*, 41 N.Y. U.L.Rev. 267 (1966): 1) predictability of results; 2) maintenance of interstate and international order; 3) simplification of the judicial task; 4) advancement of the forum's governmental interests; and, 5) application of the better rule of law. *Apollo, supra,* 382 N.W.2d at 389.

*Apollo* is factually similar to this case. Apollo, a North Dakota corporation which designed and installed fire sprinkler systems, purchased plastic escutcheons from Fire Sprinkler, a Minnesota wholesaler of fire sprinkler system components. Apollo stored the escutcheons in its Fargo warehouse and eventually installed some of them in Minnesota buildings. Apollo subsequently learned that the plastic escutcheons were not suitable for its purposes and replaced them with metal escutcheons. Apollo then sued Fire Sprinkler for damages, and Fire Sprinkler tendered defense to its insurer, MSI.

The issue in *Apollo* was whether Fire Sprinkler's comprehensive general liability policy provided coverage. As in this case, interpretation of exclusions (a) and (o) in the standard form policy were involved, and the initial question was whether Minnesota or North Dakota law applied.

In concluding that Minnesota law governed interpretation of the insurance policy, we held that in a case seeking interpretation of a liability insurance policy the most relevant and significant contacts were

---

1. Millers asserts that the prior North Dakota cases are not necessarily dispositive. Millers invites us to overrule those prior cases. In the alternative, Millers argues that they are distinguishable because in this case there was a broad form endorsement which altered the relevant exclusions and Vigen purchased a performance bond to cover this project, evidencing an intent that the liability policy not cover performance deficiencies. Because we conclude that Minnesota law applies we find it unnecessary to reach these issues.

2. We noted in *Apollo* that we have never expressly decided whether the "significant contacts" approach which we apply in resolving choice-of-law questions in tort cases is applicable in contract cases. However, as in *Apollo*, the parties to this appeal agree that the significant contacts test is appropriate and we therefore apply it, without deciding whether it is necessary or appropriate in future contract cases. *See Apollo, supra,* 382 N.W.2d at 389.

those bearing upon the contractual relationship between the insured and the insurer. *Apollo, supra*, 382 N.W.2d at 390. Other authorities support this conclusion. *See* 2 Couch on Insurance 2d, § 16:20 (1984); Leflar, American Conflicts Law § 153 (3d ed. 1977); Restatement (Second) of Conflict of Laws § 188 (1971) (*quoted in Apollo, supra*, 382 N.W.2d at 390 n. 3); Restatement (Second) of Conflict of Laws § 193 (1971). Although North Dakota had significant contacts relating to the underlying breach of warranty claim in *Apollo*, the more significant contacts with the insurance contract were with Minnesota. The insured and insurer were Minnesota corporations; the policy was negotiated and issued in Minnesota; and the insurance premiums were paid in Minnesota. Accordingly, we held that Minnesota law governed interpretation of the insurance contract.

The undisputed facts in this case establish that the more significant contacts regarding the insurance contract are with Minnesota. Vigen was a Minnesota corporation. The policy was obtained for Vigen through an insurance agency in East Grand Forks, Minnesota, which in turn enlisted the aid of an insurance broker in Minneapolis. The policy was eventually obtained through Millers' regional office in Minneapolis, and a representative from Millers' Minneapolis office met with an officer of Vigen at Vigen's offices in Minnesota. The policy was assembled, typed, billed, and delivered to Vigen in Minnesota, and Vigen paid premiums on the policy in Minnesota.

The vast majority of the North Dakota contacts which Vigen relies upon to justify application of North Dakota law relate to the underlying construction contract between Minn–Dak and Vigen. While those contacts would be significant if this were an action for breach of that contract, their significance is greatly diminished when the question is whether to apply North Dakota law to a liability insurance contract which might be available to cover Vigen's liability for those losses. *Apollo, supra*, 382 N.W.2d at 390.

The only North Dakota contact directly bearing upon the insurance issue is that the parties anticipated that Vigen would be doing work in North Dakota, and that the policy would provide coverage for Vigen in those instances. It is undisputed, however, that Vigen was engaged in construction activity in numerous states, and the policy was intended to provide coverage in all states where Vigen worked. Although the place of performance will ordinarily be an important factor in determining choice-of-law questions, "the place of performance can bear little weight in the choice of the applicable law when ... performance by a party is to be divided more or less equally among two or more states with different local law rules on the particular issue." Restatement (Second) of Conflict of Laws § 188, Comment e (1971).

Similarly, Section 193 of the Restatement provides that, in fire, surety, or casualty insurance cases, the law of the state which the parties understood was to be the principal location of the insured risk governs unless some other state has a more significant relationship to the transaction and the parties. Comment b to Section 193 makes it clear, however, that location of the insured risk will be given greater weight only when the risk is located, at least principally, in a single state. Where the policy covers "a group of risks that are scattered throughout two or more states," the location of the insured risk is accorded less significance. Restatement (Second) of Conflicts of Laws § 193, Comment b. (1971).

Analyzing the contacts in this case in light of the five choice-influencing considerations recognized in *Apollo*, Minnesota law clearly is the appropriate choice. In negotiating the insurance contract Vigen and Millers would have been more likely to believe that Minnesota law would govern the contract. *See Apollo, supra*, 382 N.W.2d at 390. Furthermore, given the fact that Vigen operates in numerous states, the possibility exists that the construction of the insurance contract could be susceptible to several differing interpretations depending upon the state in which the underlying accident occurs. Thus, the desire for predictability of results and maintenance of interstate order mitigates in favor of application of Minnesota law.

We also believe that Minnesota's interests are more deeply affected by the issues raised herein, and therefore advancement of relevant governmental interests lies in favor of Minnesota law. As we noted in *Apollo*, North Dakota has no substantial governmental interest in regulating the relationship between a Minnesota insured and its out-of-state insurer or in construing what is clearly a Minnesota-based insurance contract when the Minnesota contacts are much more significant than the North Dakota contacts.

Finally, we note that application of North Dakota law in construing this insurance contract would be exactly the type of "chauvinistic parochialism" which we warned against in *Apollo, supra,* 382 N.W. 2d at 391 n. 4. We will not apply our law solely on the premise that "we should protect North Dakota persons or entities whenever North Dakota has any contacts with a controversy."[3] *Apollo, supra,* 382 N.W.2d at 391 n. 4. Minnesota clearly has the more significant contacts with the insurance contract between Vigen and Millers, and Minnesota law should therefore govern its construction.

Because Vigen concedes that no coverage is afforded for this claim if Minnesota law is applied, we affirm the judgment of the district court.

ERICKSTAD, C.J., and VANDE WALLE, LEVINE and MESCHKE, JJ., concur.

---

**3.** We further note that the North Dakota entity involved, Minn–Dak, does not appear to be in need of protection. The record demonstrates that Minn–Dak has sued Vigen and Porta–Mix for the faulty construction. Even if Vigen and Porta–Mix were unable to pay any resulting judgment, Minn–Dak is presumably protected by the performance bond purchased for its benefit by Vigen.