2004 ND 16

**William P. ZUGER, Plaintiff and Appellant**

v.

**STATE of North Dakota, Defendant and Appellee.**

**No. 20030170.**

Supreme Court of North Dakota.

Jan. 20, 2004.

William P. Zuger, pro se, Bismarck, N.D., for plaintiff and appellant.

Tag Christian Anderson, Assistant Attorney General, Attorney General's Office, Bismarck, N.D., for defendant and appellee.

MARING, Justice.

[¶ 1]   William P. Zuger has appealed a summary judgment dismissing the complaint in his action against the State of North Dakota.  We affirm.

[¶ 2]   The State posted a vacancy announcement for an Attorney II position with the Protection and Advocacy Project, which stated, in part:

*Application Procedures:*

Applicants must submit a cover letter, resume, and completed *State of North Dakota Application for Employment (SFN 10950)* to Teresa Larsen, Executive Director, Protection and Advocacy Project. . . .

Contact Corinne Hofmann at (701) 328–2950, 1–800–472–2670, or TDD 1–800–366–6888 for more information or accommodation or assistance in the application or interview process.

*Summary of Work:*

The Protection and Advocacy Project is a statewide agency with the federally mandated purpose of protecting and advocating for the rights of people with disabilities in North Dakota.  The Project provides a continuum of services from information/referral to legal representation.  The Attorney II provides legal representation to the Project's clients, researches and develops legal opinions to assist non-attorney staff in representing clients, provides information and training to staff, consumers, parents, and other professionals on legal rights issues, and provides legislative and systemic advocacy on behalf of people with disabilities.

A decision was made to interview only the four highest-ranked applicants.  Zuger's application was ranked fifth, and he was not afforded an interview.  Protection and Advocacy Project hired one of the four applicants who were interviewed.

[¶ 3]   Zuger sued the State, alleging he applied for an Attorney II position advertised with "the criteria therefor described in a June 28, 2002, posting on the State's web site;" the position was subject to the protections of N.D.C.C. ch. 54–44.3; the State partially waived its sovereign immunity and provided for actions against it in N.D.C.C. ch. 32–12.2; he received a merit rating precluding him from further consideration for the position; the State made available to applicants, upon request, a Position Information Questionnaire describing job qualifications for the position in greater detail; and in assigning merit ratings, the State used an Application Screening and Rating sheet containing specific qualifications for the job, but it was not made available to applicants.  Zuger's complaint further alleged:

There were described seven addition[al] Items, 2 through 8, purporting to describe the qualitative practice experiences of the applicants.  He received a zero in each, for the purported reason that his application did not provided sufficient detail to determine whether that

experience was specifically in the area of disability law.

. . . .

17

Neither the web posting, nor the defendant's description of the job in the PIQ, stated that *any* disability related experience was required, except that the web posting Vacancy Announcement (but not the PIQ) stated the job required "three years of professional experience working with people with disabilities," which was specifically addressed in the plaintiff's cover letter of July 24, 2002, and clearly established by the attachments.

. . . .

20

All of the applicants approved for interviews received credit for having done legal research and analysis, such as appellate briefing.

The complaint also alleged the State did not "request further specification of disability related experience," did not contact his professional references, and did not perform "[a] simple on-line search," which "would have confirmed . . . that he has appeared . . . in the North Dakota Supreme Court." The complaint alleged the State deprived Zuger of property rights by violating N.D.C.C. ch. 54–44.3 and by violating his rights under the 14th Amendment to the United States Constitution. Finally, the complaint alleged:

The transparency of the wrongful circumstances establishes that the actions of the application rater, Kim Wassim, were done deliberately, and any reasonable and reasonably competent lawyer in the position of and having the information of staff attorney Corinne Hofmann of the Protection Advocacy Project would so determine, and was legally obligated to so determine. Therefore, he

is entitled to compensation for emotional distress, in the absence of physical injury, which injury was proximately foreseeable to the State.

[¶ 4] On December 2, 2002, the State filed a motion for dismissal under N.D.R.Civ.P. 12, asserting the complaint did not state a claim upon which relief could be granted. On December 31, 2002, the trial court noted that discovery had not been conducted, determined Zuger had "stated a claim which, if valid, may entitle him to relief," denied the State's motion to dismiss, and said, "the Court will consider a motion for summary judgment by either party once discovery has been completed." On January 29, 2003, the State filed an answer to Zuger's complaint, alleged the complaint failed to state a claim upon which relief could be granted, asserted it did not violate any of Zuger's statutory or constitutional rights, and requested dismissal of the complaint. On February 20, 2003, the State filed a brief and motion for dismissal under either N.D.R.Civ.P. 12 or N.D.R.Civ.P. 56. Zuger responded with a brief filed on March 11, 2003.

[¶ 5] After considering the briefs and numerous depositions and exhibits, the trial court issued a Memorandum Decision and Order stating, in part:

In this court's opinion, the Plaintiff has failed to adequately identify any state source to support his allegation of a constitutionally protected property interest. While he alleges that N.D. CENT. CODE ch. 54–44.3 creates a property right in prospective employment, neither the text of that chapter nor case law supports that assertion. . . . Additionally, there has been nothing presented for the court's consideration which indicates that the Central Personnel System Act supports a claim of entitlement to any benefit.

. . . .

In summary, it is this court's determination that North Dakota law does not create a constitutionally protected property interest in a prospective employment opportunity.... In light of this determination, the remaining causes of action need not be addressed.

As a matter of law, the Defendant is entitled to the relief it seeks. Plaintiff William P. Zuger has failed to state a claim upon which the relief he seeks can be validly asserted against the State of North Dakota. Therefore, the motion for summary judgment by the Defendant is GRANTED.

A judgment dismissing Zuger's complaint was filed on May 23, 2003.

Zuger appealed, raising the following issues:

1. The state merit selection law, NDCC chapter 54.44.3, and the administrative regulations promulgated to enforce it are binding on the State and a clear breach of its provisions is a wrong for which the state's tort claim statute, NDCC chapter 32–12.2, provides a remedy, as alleged by the Complaint.

2. The state merit selection law also creates a sufficient property interest in those it protects from discrimination to permit an action against the State under the 14th amendment of the United States Constitution, as alleged by the Complaint.

3. The Complaint also alleges a cause of action for the tort of outrage, for which action may be brought by virtue of the state's tort claim act, NDCC chapter 32–12.2.

[¶ 6] The trial court reviewed the parties' briefs and the depositions and other evidence in ruling on the State's motion for dismissal under N.D.R.Civ.P. 12 or 56. When the trial court considers matters outside the pleadings in ruling on a motion to dismiss, the motion is treated as one for summary judgment and disposed of under N.D.R.Civ.P. 56. *Towne v. Dinius,* 1997 ND 125, ¶ 9, 565 N.W.2d 762. Thus, we consider this appeal in the posture of summary judgment.

[¶ 7] Summary judgment is a procedural device for promptly disposing of a lawsuit without a trial if there are no genuine issues of material fact or inferences which can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. *Tarnavsky v. McKenzie County Grazing Ass'n,* 2003 ND 117, ¶ 7, 665 N.W.2d 18. "Whether summary judgment was properly granted is 'a question of law which we review de novo on the entire record.'" *Iglehart v. Iglehart,* 2003 ND 154, ¶ 9, 670 N.W.2d 343 (quoting *Wahl v. Country Mut. Ins. Co.,* 2002 ND 42, ¶ 6, 640 N.W.2d 689). On appeal, this Court decides if the information available to the trial court precluded the existence of a genuine issue of material fact and entitled the moving party to summary judgment as a matter of law. *Keator v. Gale,* 1997 ND 46, ¶ 7, 561 N.W.2d 286. Summary judgment is appropriate against parties who fail to establish the existence of a factual dispute on an essential element of a claim on which they will bear the burden of proof at trial. *Iglehart,* at ¶ 9.

[¶ 8] A party resisting a motion for summary judgment may not simply rely upon the pleadings or upon unsupported, conclusory allegations. *Iglehart,* 2003 ND 154, ¶ 10, 670 N.W.2d 343. "Factual assertions in a brief do not raise an issue of material fact satisfying Rule 56(e)." *Kemp v. City of Grand Forks,* 523 N.W.2d 406, 408 (N.D.1994). "Nor may a party merely reassert the allegations in his pleadings in order to defeat a summary judgment motion." *Id.*

The resisting party must present competent admissible evidence by affidavit or other comparable means which raises an issue of material fact and must, if appropriate, draw the court's attention to relevant evidence in the record by setting out the page and line in depositions or other comparable documents containing testimony or evidence raising an issue of material fact.

In summary judgment proceedings, neither the trial court nor the appellate court has any obligation, duty, or responsibility to search the record for evidence opposing the motion for summary judgment. The opposing party must also explain the connection between the factual assertions and the legal theories in the case, and cannot leave to the court the chore of divining what facts are relevant or why facts are relevant, let alone material, to the claim for relief.

*Iglehart,* at ¶ 10 (quoting *Anderson v. Meyer Broad. Co.,* 2001 ND 125, ¶ 14, 630 N.W.2d 46 (citations omitted)). Mere speculation is not enough to defeat a motion for summary judgment, and a scintilla of evidence is not sufficient to support a claim. *Iglehart,* at ¶ 10. If no pertinent evidence on an essential element is presented to the trial court in resistance to a motion for summary judgment, it is presumed that no such evidence exists. *Kummer v. City of Fargo,* 516 N.W.2d 294, 297 (N.D.1994).

[¶ 9] In its brief in support of its motion to dismiss, the State relied upon a large number of state and federal decisions for the propositions that one cannot bring an action against a state under the Fourteenth Amendment, that Zuger had no protectible property or liberty interest within the meaning of the Fourteenth Amendment, that there is no implied private cause of action under N.D.C.C. ch. 54–44.3, and that Zuger had failed to state a claim upon which relief could be granted for intentional infliction of emotional distress.

[¶ 10] Zuger responded with a three-page brief. With regard to the N.D.R.Civ.P. 12 aspect of the State's motion, Zuger cited only N.D.R.Civ.P. 7 and 12, and 5A Charles Alan Wright & Arthur R. Miller, *Fed. Practice & Procedure* § 1385 (2d ed.1990) for his propositions that "it's already been decided" in the court's order on the State's first Rule 12(b) motion, and grounds for the motion must be stated with particularity in a single motion. With regard to the N.D.R.Civ.P. 56 aspect of the State's motion, Zuger cited no authorities, other than conclusory assertions about noncompliance by the State with three sections of the North Dakota Administrative Code, and submitted the following factual assertions:

Therefore, I oppose the motion, submitting an appropriate summary of the facts established in discovery and submit the depositions for the Court's consideration, as appropriate.

Depositions have been taken of Teresa Larsen, Corinne Hofmann, Kim Wassim, Bruce Murry, Pam Mack and Loretta Movchan, which with the exhibits, 1 through 28, inclusive, are herewith filed. The State has conducted no discovery.

Larsen, the executive director of Protection and Advocacy, appointed Corinne Hofmann, a staff attorney to take overall charge of hiring for the position, which Hofmann had previously occupied. She worked with Kim Wassim at Central Personnel, who rated the applicants' written applications as to qualification for the job.

Wassim had no legal training and had never before evaluated a lawyer. She depended on Hofmann to advise her as to the job requirements and to help interpret the applications and did, in-

deed, confer repeatedly. Hofmann testified that my application, on its face, established a higher level of numerical score than assigned by Wassim; at least one more point, although she refused to say specifically how many points. She testified, further, that one more point would have qualified me for an interview.

The depositions also established that after receiving the applications, Hofmann directed Wassim to reduce the points assigned for practice experience, from 48 to 30. Hofmann was also advised in writing by a co-employee at P & A that the attorney hired for the job was fired from his previous job, but, in response, she personally undertook sole responsibility to look into it. She kept this information from everyone else involved in the hiring process, including Larsen. She deliberately did not follow up on the advice and did not contact Murry's direct supervisor or follow the lead back through the individual who wrote to her, Pam Mack.

She did not comply with the regulations regarding listing the job, NDAC sections 4-07-05-05 or -08, although she was aware of them and knew she was required to follow them. These sections required that the vacancy announcement list *all* minimum *and additional* job criteria, upon which the applicants would be rated. Additional criteria were used which none of the applicants met in their entirely [sic], but for which all applicants except me were given partial credit.

. . . .

She did not comply with the requirements of NDAC section 4-07-25-06, requiring "action, upon notification, to correct an error made by the agency in any part of the examination," although she was aware of it and was given specific written notice by me of the essential errors made in the evaluation of my application, before the hiring process was completed. Indeed, even though Pam Mack had advised her of Murry's prior termination from Burleigh County Social Services the hour before I met with her, she never followed up on it.

[¶ 11] Here, as in *First Nat'l Bank & Trust Co. v. Jacobsen,* 431 N.W.2d 284, 288 (N.D.1988), Zuger "left to the court the chore of divining what [his] argument in opposition to summary judgment was," his "paperwork did not highlight a genuine issue of material fact," and he "did not explain the significance of the evidence." We, therefore, conclude Zuger "did not provide the district court with evidence raising a genuine issue of material fact." *Id.*

[¶ 12] Zuger failed to cite any authority which supports he has a property right to an interview. While Zuger relied upon N.D.C.C. ch. 32-12.2, he did not show the trial court he had a claim that existed at common law or had "otherwise been created by law as of April 22, 1995." *See* N.D.C.C. § 32-12.2-02(5), which provides: "This chapter does not create or allow any claim that does not exist at common law or has not otherwise been created by law as of April 22, 1995."

[¶ 13] The elements of an action for intentional infliction of emotional distress are extreme and outrageous conduct that is intentional or reckless and causes severe emotional distress. *Muchow v. Lindblad,* 435 N.W.2d 918, 923-24 (N.D.1989). The trial court must initially decide if a defendant's conduct reasonably may be regarded as extreme and outrageous. *Kautzman v. McDonald,* 2001 ND 20, ¶ 19, 621 N.W.2d 871. "If reasonable people could differ, a plaintiff is entitled to have the trier of fact determine whether the conduct is sufficiently extreme and outrageous to result in liability." *Id.*

[¶ 14] Zuger has not pointed out any specific record evidence that he has suffered severe emotional distress. "However, with regard to the claim for intentional infliction of emotional distress, the degree of outrageousness of a defendant's conduct may itself be important evidence of severe emotional distress necessary to support a claim for intentional infliction of emotional distress." *Muchow*, 435 N.W.2d at 924. Thus, we examine whether the State's conduct meets the threshold of extreme and outrageous conduct. "Comment d. of the Reporter's Notes of § 46 of the Restatement ... makes clear that it ... 'has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress.'" *Muchow*, 435 N.W.2d at 924. The "extreme and outrageous" threshold is narrowly limited to conduct that exceeds "all possible bounds of decency," and which would arouse resentment against the actor and lead to an exclamation of "Outrageous!" by an average member of the community. *Id.*

[¶ 15] Zuger has not persuaded us that the State's decision not to interview an applicant for an attorney position because his ranking was below the required level based upon use of a scoring device giving credit for factors contained in a position information questionnaire is sufficiently extreme and outrageous as to support an action for intentional infliction of emotional distress. Although the position information questionnaire was not fully specified in the vacancy announcement, it was available upon an applicant's request in accordance with the vacancy announcement's advice to "[c]ontact Corinne Hofmann ... for more information or accommodation or assistance in the application or interview process." Even additionally considering the fact the State did not request further information from the applicant, contact the applicant's professional references, or perform an on-line search, which would have revealed the applicant had appeared before this Court, does not render the State's conduct sufficiently extreme and outrageous as to support an action for intentional infliction of emotional distress.

[¶ 16] The summary judgment of dismissal is affirmed.

[¶ 17] DALE V. SANDSTROM, CYNTHIA ROTHE–SEEGER, D.J., WILLIAM F. HODNY, S.J., and WILLIAM A. NEUMANN, JJ., concur.

[¶ 18] The Honorable CYNTHIA ROTHE–SEEGER, D.J., and the Honorable WILLIAM F. HODNY, S.J., sitting in place of KAPSNER, J., and VANDE WALLE, C.J., disqualified.