2009 ND 171

**Randall SCHLEUTER, Plaintiff and Appellant**

v.

**NORTHERN PLAINS INSURANCE COMPANY, INC., Defendant and Appellee**

**and**

**Charlotte Schleuter, Defendant.**

**No. 20090060.**

Supreme Court of North Dakota.

Sept. 23, 2009.

Anthony Joseph Weiler (argued), and David S. Maring (on brief), Bismarck, N.D., for plaintiff and appellant.

Clark Jay Bormann, Bismarck, N.D., for defendants and appellees.

CROTHERS, Justice.

[¶ 1] Randall Schleuter appeals from a summary judgment dismissing his action against Northern Plains Insurance Company ("Northern Plains") for coverage for injuries arising out of an automobile accident. Because we conclude the applicable insurance policy's "out-of-state coverage" provision precludes application of the policy's "household exclusion" in order to conform to North Dakota law, we reverse.

I

[¶ 2] The parties stipulated that in November 2006, Randall Schleuter was a passenger in a motor vehicle driven by his wife, Charlotte Schleuter, and owned by Randall Schleuter. Charlotte Schleuter lost control of the motor vehicle near Casselton, North Dakota, the vehicle rolled, and Randall Schleuter was injured. It is undisputed that at the time of the accident, Northern Plains, a South Dakota company, insured Schleuter's vehicle under an automobile liability policy issued in South Dakota, and the Schleuters purchased the policy while residents of South Dakota. The parties do not dispute that North Dakota's involvement with this proceeding is limited to the site of the accident and the location of Randall Schleuter's initial medical treatment. Since his release from a Fargo hospital, Randall Schleuter has received medical treatment at South Dakota facilities.

[¶ 3] In October 2007, Randall Schleuter sued Northern Plains and Charlotte Schleuter, alleging that Charlotte Schleuter was negligent and responsible for Randall Schleuter's injuries and declaring that Northern Plains was required under the policy to pay him no-fault benefits and was required to defend and indemnify Charlotte Schleuter for his claims. Randall Schleuter and Northern Plains filed cross-motions for summary judgment, agreeing that resolution of the insurance coverage issues would resolve the litigation.

[¶ 4] The liability coverage provision of Northern Plains' policy contains the following "household" or "family" exclusion:

"When Liability Coverage Does not Apply
In addition to the limitations of coverage in 'Who Is an Insured'
THERE IS NO COVERAGE
. . . .
"2. FOR ANY BODILY INJURY TO:
. . . .
c. ANY INSURED OR ANY MEMBER OF AN INSURED'S FAMILY RESIDING IN THE INSURED'S HOUSEHOLD."

The liability coverage provision also includes an "out-of-state coverage" or "conformity" clause in a subsection entitled "Motor Vehicle Compulsory Insurance Law or Financial Responsibility Law." That provision states:

"1. Out-of-State coverage
If an insured under the liability coverage is in another state or Canada and, as a non-resident, *becomes subject to* its

motor vehicle compulsory insurance, financial responsibility or similar law:

 a. the policy will be *interpreted to give the coverage required by the law;* and

 b. the coverage so given *replaces any coverage in this policy to the extent required by the law* for the insured's operation, maintenance or use of a car insured under this policy.

Any coverage so extended shall be reduced to the extent other coverage applies to the accident. In no event shall a person collect more than once.

"2. Financial Responsibility Law

When certified under any law as proof of future financial responsibility, and while required during the policy period, this policy shall comply with such law to the extent required."

(Emphasis added.)

[¶ 5] The district court granted Northern Plains' summary judgment motion, ruling South Dakota has more significant contacts and therefore South Dakota law should apply, permitting application of the policy's "household exclusion" to coverage for a responsible family member.

## II

 [¶ 6] Under N.D.R.Civ.P. 56, summary judgment is " 'a procedural device for promptly resolving a controversy on the merits without a trial if either party is entitled to judgment as a matter of law, and if no dispute exists as to either the material facts or the inferences to be drawn from the undisputed facts, or if resolving disputed facts would not alter the results.' " *Farmers Union Mut. Ins. Co. v. Associated Elec. & Gas Ins. Servs. Ltd.,* 2007 ND 135, ¶ 7, 737 N.W.2d 253 (quoting *ACUITY v. Burd & Smith Const., Inc.,* 2006 ND 187, ¶ 6, 721 N.W.2d 33).

"The party moving for summary judgment has the burden of establishing that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. In deciding whether the district court appropriately granted summary judgment, this Court views the evidence in the light most favorable to the party opposing the motion, and the opposing party will be given the benefit of all favorable inferences that can reasonably be drawn from the record. On appeal, we decide 'whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law.' "

*Farmers Union,* at ¶ 7 (citations omitted). Whether summary judgment was properly granted is a question of law that this Court reviews de novo on the entire record. *Id.; Ernst v. Acuity,* 2005 ND 179, ¶ 7, 704 N.W.2d 869.

## III

[¶ 7] This case involves the interpretation of Northern Plains' policy to determine whether the policy's "conformity" or "out-of-state coverage" clause provides the "coverage" required under North Dakota law, or whether the policy's "family or household exclusion" excludes coverage. Randall Schleuter argues the district court erred in granting Northern Plains summary judgment because the policy's conformity clause provides the coverage required under North Dakota law, which holds a family or household exclusion in a liability policy is void. *See Hughes v. State Farm Mut. Auto. Ins. Co.,* 236 N.W.2d 870, 885 (N.D.1975). Northern Plains responds that the district court did not err as a matter of law in determining South Dakota law governed this case and in applying the household exclusion to preclude coverage.

 [¶ 8] Under North Dakota law, the interpretation of an insurance contract

is a question of law, fully reviewable on appeal. *Burd & Smith Constr.*, 2006 ND 187, ¶ 7, 721 N.W.2d 33. "This Court independently examines and construes an insurance policy to determine if the district court erred in its construction." *Grinnell Mut. Reinsurance Co. v. Lynne*, 2004 ND 166, ¶ 20, 686 N.W.2d 118. We summarized the standards for construing an insurance contract in *Ziegelmann v. TMG Life Ins. Co.*, 2000 ND 55, ¶ 6, 607 N.W.2d 898 (citations omitted):

"Our goal when interpreting insurance policies, as when construing other contracts, is to give effect to the mutual intention of the parties as it existed at the time of contracting. We look first to the language of the insurance contract, and if the policy language is clear on its face, there is no room for construction. 'If coverage hinges on an undefined term, we apply the plain, ordinary meaning of the term in interpreting the contract.' While we regard insurance policies as adhesion contracts and resolve ambiguities in favor of the insured, we will not rewrite a contract to impose liability on an insurer if the policy unambiguously precludes coverage. We will not strain the definition of an undefined term to provide coverage for the insured. We construe insurance contracts as a whole to give meaning and effect to each clause, if possible. The whole of a contract is to be taken together to give effect to every part, and each clause is to help interpret the others."

"Exclusions from coverage ... must be clear and explicit and are strictly construed against the insurer." *Nationwide Mut. Ins. Cos. v. Lagodinski*, 2004 ND 147, ¶ 9, 683 N.W.2d 903 (quoting *Grinnell Mut. Reinsurance Co. v. Center Mut. Ins. Co.*, 2003 ND 50, ¶ 10, 658 N.W.2d 363). Although exclusionary provisions are strictly construed, we "will not rewrite a contract to impose liability on an insurer if

the policy unambiguously precludes coverage." *Lagodinski*, at ¶ 9.

[¶ 9] Likewise, under South Dakota law, the interpretation of an insurance contract presents a legal question, reviewed de novo on appeal. *MGA Ins. Co., Inc. v. Goodsell*, 2005 SD 118, ¶ 9, 707 N.W.2d 483. Ambiguous language in an insurance contract is construed liberally in favor of the insured. *Northland Ins. Co. v. Zurich Am. Ins. Co.*, 2007 SD 126, ¶ 13, 743 N.W.2d 145. "The existence of the rights and obligations of parties to an insurance contract are determined by the language of the contract, which must be construed according to the plain meaning of its terms. Thus, in deciphering the language of the insurance contract, the court must employ a plain meaning approach." *State Farm Fire & Cas. Co. v. Harbert*, 2007 SD 107, ¶ 17, 741 N.W.2d 228 (citation and quotation omitted).

[¶ 10] "In determining coverage under the contract, [the Court] must look to the contractual intent and objectives of the parties as expressed in the contract." *Northland Ins. Co.*, 2007 SD 126, ¶ 13, 743 N.W.2d 145. " 'Limits to coverage, whether in exclusions, limitations, riders, or endorsements, should be set forth clearly and explicitly.' " *Fall River County v. South Dakota Pub. Assur. Alliance*, 2001 SD 40, ¶ 8, 623 N.W.2d 735 (quoting *Mid–Century Ins. Co. v. Lyon*, 1997 SD 50, ¶ 9 n. 4, 562 N.W.2d 888).

[¶ 11] Northern Plains argues this case presents a "choice of law" issue under this Court's decision in *Nodak Mut. Ins. Co. v. Wamsley*, 2004 ND 174, ¶¶ 14–23, 687 N.W.2d 226, which held North Dakota and not Montana law governed the right to stack underinsured motorist coverages, where the policies were issued to North Dakota residents by a North Dakota insurance company and the accident occurred in Montana. In *Wamsley*, this Court reiter-

ated "the choice-influencing considerations [for purposes of North Dakota's choice-of-law analysis, including] predictability of results, maintenance of interstate and international order, simplification of the judicial task, advancement of the forum's governmental interests, and application of the better rule of law." *Id.* at ¶ 11 (discussing Robert A. Leflar, *Choice–Influencing Considerations in Conflicts Law,* 41 N.Y.U.L.Rev. 267, 282 (1966); *Issendorf v. Olson,* 194 N.W.2d 750, 754–56 (N.D. 1972)). In *Wamsley* we also discussed our prior decision in *Plante v. Columbia Paints,* 494 N.W.2d 140, 141 (N.D.1992), which involved a declaratory judgment action to determine insurance coverage for injuries occurring in a North Dakota explosion.

[¶ 12] In *Plante,* this Court held the significant contacts approach was appropriate in cases with "multi-state factual contacts," concluding the most significant contacts were those bearing on the contractual relationship because North Dakota's contacts were primarily related to the underlying tort, and the contacts between the parties to the insurance contract were primarily out-of-state. *See Wamsley,* 2004 ND 174, ¶ 12, 687 N.W.2d 226 (discussing *Plante,* 494 N.W.2d at 142). "[O]ur significant contacts test for deciding choice-of-law questions requires a two-pronged analysis." *Wamsley,* 2004 ND 174, ¶ 13, 687 N.W.2d 226 (citing *Daley v. American States Preferred Ins. Co.,* 1998 ND 225, ¶ 10, 587 N.W.2d 159). First, we identify the relevant contacts which might logically influence the decision on the applicable law, and then we apply the choice-influencing considerations "to determine which jurisdiction has the more significant interest with the issues in the case." *Wamsley,* at ¶ 13 (quoting *Daley,* at ¶ 12).

[¶ 13] In this case, it is undisputed that Randall and Charlotte Schleuter are residents of South Dakota, that Randall Schleuter's vehicle was registered in South Dakota, that the vehicle was insured through a policy with Northern Plains liability, that Northern Plains is a South Dakota company that does not do business in North Dakota, that the policy was negotiated, purchased, issued and paid for by the Schleuters as South Dakota residents, and that Randall Schleuter's medical treatment after being released from a Fargo hospital has been through South Dakota facilities. Further, North Dakota's contacts are limited to the initial underlying accident and injuries in North Dakota and to Randall Schleuter's initial treatment and one-night stay at a Fargo hospital before returning home to South Dakota.

[¶ 14] Under a North Dakota choice-of-law analysis, we conclude South Dakota law applies to interpret the policy language at issue in this case. That conclusion requires this Court to construe the competing provisions of the policy under South Dakota rules for interpreting insurance contracts. We reject Northern Plains' assertion that based upon *Wamsley,* 2004 ND 174, 687 N.W.2d 226, South Dakota law automatically requires application of the policy's household exclusion. The *Wamsley* case involved application of North Dakota law, including statutory and policy prohibition on stacking underinsured motorist coverage, and did not address an "out-of-state coverage" clause. This case, however, involves the interpretation of specific policy language including the "out-of-state coverage" clause and the household exclusion. We initially consider the out-of-state coverage clause.

## IV

[¶ 15] In concluding the policy's "household exclusion" applied to limit coverage, the district court held "North Dakota's conformity clause *does not trump the*

*contract* voluntarily entered into by the parties and which is in compliance with South Dakota law." (Emphasis added.) The district court's opinion misinterprets the contractual nature of the "conformity" or "out-of-state coverage" clause, which is also an important part of the insurance contract between Northern Plains and the Schleuters. That clause provides, in part, that when an insured under the liability coverage "becomes subject to [another state's] motor vehicle compulsory insurance, financial responsibility or similar law," the policy is "interpreted to give the coverage required by the law" and "replaces any coverage in this policy to the extent required by the law." Northern Plains argues this language only requires the policy to conform to the minimum limits required by North Dakota's financial responsibility law and does not require "full application" of North Dakota law. We disagree.

[¶ 16] Having concluded South Dakota law applies to interpret this policy, we look to the plain language of the policy. The "out-of-state coverage" clause is not ambiguous, and if the insured is in another state and becomes subject to that state's insurance law, the policy provides "coverage" "required by the law" and "replaces any coverage in this policy to the extent required by the law" for the insured's "operation" or "use" of a vehicle. Here, "required by the law" refers to the "coverage" that is required by the law where the Schleuters were, North Dakota. The policy does not provide a general definition of the term "coverage." In the insurance context, the term "coverage" has been defined as "normally refer[ring] ... to the amount and extent of risk included in the scope of a policy." *Aid Ass'n for Lutherans v. United States Postal Serv.*, 321 F.3d 1166, 1176 (D.C.Cir.2003); *see Black's Law Dictionary* 394 (8th ed.2004) (defining "coverage" as "[i]nclusion of a risk under an insurance policy; the risks within the

scope of an insurance policy"); *Merriam–Webster's Collegiate Dictionary* 288 (11th ed.2003) (defining "coverage" as "something that covers: as ... inclusion within the scope of an insurance policy or protective plan"). *See also In re Joint Eastern and Southern Dist. Asbestos Litigation,* 993 F.2d 313, 314 (2d Cir.1993) (" '[C]overage' ... is the amount and extent of the risk [an insurer] contractually assumed, as specified in the insuring clause and exclusions."); *Traders State Bank v. Continental Ins. Co.*, 448 F.2d 280, 283 (10th Cir. 1971) ("The word coverage is, indeed, a term of art in the insurance industry, meaning 'the sum of all the risks assumed under the policy.' "); *Guaranty Nat'l Ins. Co. v. Bayside Resort, Inc.*, 635 F.Supp. 1456, 1458 (D.Virgin Islands 1986) ("The universal definition of 'coverage' is the amount and extent of risk contractually assumed by the carrier."); *National Union Fire Ins. Co. v. Reynolds*, 77 Hawai'i 490, 889 P.2d 67, 69 n. 3 (1995) ("Coverage refers to 'the "assumption of risk of occurrence of the event insured against before its occurrence." ' "); *Illinois Farmers Ins. Co. v. Tabor*, 267 Ill.App.3d 245, 204 Ill. Dec. 697, 642 N.E.2d 159, 163 (1994) ("[C]overage is the amount and extent of risk contractually assumed by an insurer," and " 'limits of liability' refers to the 'bounds or restrictions' of [an insurer's] duty to pay, assuming the existence of certain conditions."); *Seabaugh v. Sisk,* 413 S.W.2d 602, 606 (Mo.Ct.App.1967) (" '[C]overage' refers to the 'aggregate of risks covered by the terms of a contract of insurance' " or " 'the sum of risks which an insurance policy covers.' "); *New York University v. Continental Ins. Co.*, 87 N.Y.2d 308, 639 N.Y.S.2d 283, 662 N.E.2d 763, 772 (1995) ("[C]overage is the net total of policy inclusions minus exclusions...."); *D'Angelo v. Cornell Paperboard Prods. Co.*, 59 Wis.2d 46, 207 N.W.2d 846, 849 (1973) ("Coverage or cov-

erages as that word is generally used refers to the sum of risks which an insurance policy covers."); *Miller v. Amundson,* 117 Wis.2d 425, 345 N.W.2d 494, 497 (1984) ("The word 'coverage' includes the policy's dollar limits of liability.").

[¶ 17] The term "coverage" as used in the policy's provision for out-of-state coverage is broader than the "minimum limits" of liability. Rather, coverage includes the risks and contemplates "the coverage required by the law" of the state in which the insured is in as a non-resident, which in this case was North Dakota. Northern Plains could have used language to clearly restrict the change in the policy for out-of-state use or operation of a motor vehicle to the "limits of its liability," but did not. Instead, the policy purports "to give the coverage required by the law" and "the coverage so given replaces any coverage in this policy to the extent required by the law for the insured's operation, maintenance or use of a car insured under this policy." By using this language, Northern Plains obligated itself to protect its insureds from changing liabilities and to conform with various states laws, here North Dakota law, by "replacing" coverage in the policy with that "required by the law." Therefore, if Charlotte Schleuter became "subject" to North Dakota's "motor vehicle compulsory insurance, financial responsibility or similar law," the policy's provisions will be subject to the requirements of North Dakota law for the claims brought by Randall Schleuter against Charlotte Schleuter under the policy.

[¶ 18] "North Dakota law requires that no person shall drive a motor vehicle without a valid motor vehicle liability insurance policy in the amount required by Chapter 39–16.1, N.D.C.C. Section 39–08–20, N.D.C.C." *Richard v. Fliflet,* 370 N.W.2d 528, 534 (N.D.1985). Specifically, N.D.C.C. § 39–08–20(1) provides:

"A person may not drive, or the owner may not cause or knowingly permit to be driven, a motor vehicle in this state without a valid policy of liability insurance in effect in order to respond in damages for liability arising out of the ownership, maintenance, or use of that motor vehicle in the amount required by chapter 39–16.1."

Chapter 39–16.1, N.D.C.C., provides the minimum coverage required to satisfy North Dakota's financial responsibility law. *See Grinnell Mut. Reinsurance Co. v. Farm & City Ins. Co.,* 2000 ND 163, ¶ 16, 616 N.W.2d 353; *RLI Ins. Co. v. Heling,* 520 N.W.2d 849, 852 (N.D.1994). Section 39–16.1–10, N.D.C.C., provides:

"1. *The nonresident owner of a motor vehicle not registered in this state* may give proof of financial responsibility by filing with the director a written or electronically transmitted certificate of an insurance carrier authorized to transact business in the state in which the motor vehicle or motor vehicles described in the certificate is registered, *or if the nonresident does not own a motor vehicle, then in the state in which the insured resides, provided the certificate otherwise conforms to the provisions of this chapter,* and the director shall accept the same upon condition that the insurance carrier complies with the following provisions with respect to the policies so certified:

. . . .

b. The insurance carrier shall agree in writing that the policies conform with the laws of this state relating to the terms of motor vehicle liability policies issued herein.

. . . .

"3. Notwithstanding the requirement of subsection 1, the nonresident owner of a motor vehicle not registered in

this state may file proof of future financial responsibility of an insurance company or other state-authorized entity providing insurance and authorized or licensed to do business in the nonresident's state of residence as long as such proof of future financial responsibility is in the amounts required by this state."

(Emphasis added.) Section 39–16.1–11, N.D.C.C., states, in part:

"1. A 'motor vehicle liability policy' as said term is used in this chapter means an owner's or an operator's policy of liability insurance, certified as provided in sections 39–16.1–09 and 39–16.1–10 as proof of financial responsibility, and issued, except as otherwise provided in section 39–16.1–10, by an insurance carrier duly authorized to transact business in this state, to or for the benefit of the person named therein as insured.

"2. Such owner's policy of liability insurance:

a. Must designate by explicit description or by appropriate reference all motor vehicles with respect to which coverage is thereby to be granted; and

b. Must insure the person named therein and any other person, as insured, using such motor vehicle or motor vehicles with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of such motor vehicles within the United States of America or the Dominion of Canada, subject to limits exclusive of interest and costs, with respect to each such motor vehicle, as follows: twenty-five thousand dollars because of bodily injury to or death of one person in any one accident and subject to said limit for one person, fifty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and twenty-five thousand dollars because of injury to or destruction of property of others in any one accident.

"3. Such operator's policy of liability insurance must insure the person named as insured therein against loss from the liability imposed upon the person by law for damages arising out of the use by the person of any motor vehicle, either unlimited, or limited by excluding certain classes or types of motor vehicles, within the same territorial limits and subject to the same limits of liability as are set forth above with respect to an owner's policy of liability insurance."

*See also* N.D.C.C. § 39–16–01(6), (7) (defining "nonresident" and "nonresident's operating privilege" for purposes of the financial responsibility law); N.D.C.C. § 39–16–05 (providing for suspension of operating privilege of nonresident driver involved in an accident unless compliance with financial responsibility laws "affording substantially the same coverage required for proof of financial responsibility under chapter 39–16.1").

[¶ 19] We construe the above sections to require a "non-resident" to provide insurance that "conforms to the provisions of this chapter." Based upon the statutory language and applying South Dakota insurance contract interpretation principles, we conclude Charlotte Schleuter became subject to the financial responsibility laws of North Dakota and is entitled under the out-of-state coverage clause to the coverage required by North Dakota for nonresident motor vehicle operators. It is undisputed that Charlotte Schleuter was operating the vehicle owned by Randall

Schleuter in North Dakota at the time of the accident that injured Randall Schleuter. Because the accident occurred in North Dakota, Charlotte Schleuter was subject to North Dakota's motor vehicle compulsory insurance, financial responsibility or similar law. To the extent that claims are brought against Charlotte Schleuter under the liability section of the policy, Charlotte Schleuter is entitled to the protection and coverage which North Dakota requires for operation of a vehicle on North Dakota highways.

[¶ 20] We next interpret the policy to determine whether the "household or family exclusion" applies in this case. The "household exclusion" in Northern Plains' policy states that there is no coverage for any bodily injury to "any insured or any member of an insured's family residing in the insured's household." This exclusion is permissible, but not required, under South Dakota law. *See* S.D.C.L. § 32–35–70 ("The policy may exclude or limit coverage pursuant to § 58–11–9.3, or for a relative residing in the named insured's household."); *Goodsell*, 2005 SD 118, ¶¶ 12–13, 23, 707 N.W.2d 483 (holding S.D.C.L. § 32–35–70 ˙ clearly delineated between a "named insured" and an "insured" and permitted an insurer to limit coverage only for a "relative residing in 'the named insured's household' "); *see also Isaac v. State Farm Mut. Auto. Ins. Co.*, 522 N.W.2d 752, 756 n. 1 (S.D.1994).

[¶ 21] Under North Dakota law, however, such a provision in an insurance policy is void. *See Hughes*, 236 N.W.2d 870, 885 (N.D.1975). In *Hughes*, this Court held a " 'household, or family, exclusion clause' contained in a policy of motor vehicle liability insurance issued and delivered in this State is void as violative of public policy and the statutes of this State." *Id.*

"We recognized that the basic purpose of Chapters 39–16 [Financial Responsi-bility of owners and operators] and 39–16.1 [Proof of Financial Responsibility for the Future], N.D.C.C., was to protect innocent victims of motor vehicle accidents from financial disaster. We said that the license suspension sanctions imposed by Chapter 39–16, N.D.C.C., were intended to guarantee financial responsibility for a *first* accident, in contrast to the requirements of Chapter 39–16.1, N.D.C.C., which were designed to establish proof of financial responsibility for *future* accidents involving a motor vehicle owner or operator who has already had an accident, or who has been convicted of certain traffic offenses. We concluded that our financial responsibility laws and public policy required a motor vehicle liability policy purchased to avoid the sanctions in Section 39–16–05, N.D.C.C., to provide the named insured, and any other person using the insured motor vehicle with permission of the named insured, with minimum coverage for damages arising out of the ownership, maintenance, or use of the insured motor vehicle. We held that the 'household or family exclusion' clause violated our financial responsibility laws and public policy because that clause excluded coverage for a class of beneficiaries suffering damages arising out of the ownership, maintenance, or use of the insured motor vehicle."

*State Farm Mut. Auto. Ins. Co. v. LaRoque*, 486 N.W.2d 235, 238–39 (N.D.1992) (discussing *Hughes*, 236 N.W.2d 870). In *Hughes* this Court held the family exclusion clause was contrary to public policy because it failed to meet the minimum coverage required under this state's financial responsibility laws in N.D.C.C. chs. 39–16 and 39–16.1. Although Northern Plains essentially argues the family or household exclusion applies to this case because *Hughes* is limited to policies issued and delivered in this State, we con-

clude the "out-of-state coverage" clause requires application of *Hughes* to fully conform to the requirements of North Dakota law.

[¶ 22] In this case, because the "out-of-state coverage" clause of the policy applies, the claims brought against Charlotte Schleuter are governed by North Dakota law. The "coverage" required by North Dakota law is thus available to claims under the liability policy. North Dakota's financial responsibility insurance law is a compulsory law and applies to non-resident operators of motor vehicles in this state. *See* N.D.C.C. §§ 39–08–20, 39–16.1–10, 39–16.1–11. *See also* N.D.C.C. § 26.1–41–02(1), (3) ("1. The owner of a motor vehicle required to be registered in this state, or the owner of a motor vehicle operated in this state by the owner or with owner's permission, shall continuously provide with respect to the motor vehicle during the period in which operation is contemplated in this state security for payment of basic no-fault benefits and the liabilities covered under the motor vehicle liability insurance." and "3. If the motor vehicle is registered in another state, the security may be provided by an insurance policy issued by an insurer authorized to transact business in either this state or the state in which the motor vehicle is registered, or, by self-insurance as approved by the insurance department of the state in which the motor vehicle is registered."). Under *Hughes* and North Dakota law, that coverage may not be limited by a household or family exclusion.

[¶ 23] Based on the plain language of the "out-of-state coverage" clause in the coverage section of the policy, we conclude members of the household who have claims under the liability policy against Charlotte Schleuter are not precluded from bringing those claims. We reach this conclusion based upon policy language that plainly states the insurance required under North Dakota law "replaces" the coverage pro-

vided in the policy, and based upon North Dakota law that requires the coverage of family members. Other courts have reached similar conclusions. *See State Farm Mut. Auto. Ins. Co. v. McNeal*, 491 F.Supp.2d 814, 824–25 (S.D.Ind.2007); *Cartner v. Nationwide Mut. Fire Ins. Co.*, 123 N.C.App. 251, 472 S.E.2d 389, 391 (1996); *see also State Farm Mut. Auto. Ins. Co. v. Ballard*, 132 N.M. 696, 54 P.3d 537, 542 (2002). *But see Draper v. Draper*, 115 Idaho 973, 772 P.2d 180, 184–85 (1989).

[¶ 24] Under the plain language of the policy, we conclude the broad grant of coverage in the policy's out-of-state coverage clause, by its own terms, "replaces any coverage" in the policy, grants the coverage required under North Dakota law and precludes application of the household exclusion.

## V

[¶ 25] We have considered the remaining arguments raised by Northern Plains and determine they are either unnecessary to our decision or without merit. The district court judgment is reversed.

[¶ 26] GERALD W. VANDE WALLE, C.J., SONJA CLAPP, D.J. DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.

[¶ 27] The Honorable SONJA CLAPP, D.J., sitting in place of MARING, J., disqualified.