Filed 1/12/10 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2010 ND 6

James L. Horob, Plaintiff and Appellant

v.

Farm Credit Services of North Dakota ACA, 

and its subsidiaries, Defendant and Appellee

No. 20090111

Appeal from the District Court of Williams County, Northwest Judicial District, the Honorable David W. Nelson, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice.

Suzanne Marie Schweigert, P.O. Box 460, Bismarck, N.D. 58502-0460, for plaintiff and appellant.

Richard P. Olson, P.O. Box 1180, Minot, N.D. 58702-1180, for defendant and appellee.

Horob v. Farm Credit Services of North Dakota ACA

No. 20090111

Crothers, Justice.

[¶1] James L. Horob appeals from a summary judgment dismissing his action against Farm Credit Services of North Dakota ACA (“FCS”).  We conclude the district court did not err granting summary judgment dismissal and did not abuse its discretion denying Horob’s request for additional discovery.  We affirm the judgment and impose sanctions on FCS for violating N.D.R.App.P. 30.

I

[¶2] James Horob is a farmer and owns land in Williams County.  In 1997, FCS loaned $305,800 to Horob; his brother, Todd Horob; and his father, Larry Horob, for the purchase of real property.  The Horobs executed a promissory note and a real estate mortgage in favor of FCS. 

[¶3] In 2001, FCS loaned Horob, Todd Horob and Larry Horob money for the purchase of two windrowers.  Horob, Todd Horob and Larry Horob granted FCS a security interest in their livestock and poultry, the two windrowers and other equipment.  The loan for the windrowers was paid off in 2002, and FCS terminated the Uniform Commercial Code financing statements for the windrowers and other equipment releasing the liens on the machinery.  FCS did not release the lien on Horob’s livestock.

[¶4] In 2002, FCS loaned Todd Horob and Larry Horob money.  Todd Horob and Larry Horob gave FCS a new security interest in their livestock.  Horob, Todd Horob, and Larry Horob also executed a real estate mortgage to secure the loan.   

[¶5] In March 2006, Horob received a line of credit from Dakota Community Bank, N.A., to purchase 1,000 to 1,500 cattle.  To secure the loan, Horob gave Dakota Community Bank a security interest in his livestock.  Horob used a portion of the line of credit to purchase 198 cattle.  Horob claims he was not aware FCS had not released the lien on his cattle.  

[¶6] On March 17, 2006, Horob contacted his loan officer at FCS requesting release of the lien on his cattle.  The loan officer initially informed Horob that he did not think it would be a problem to release the lien, but FCS later denied Horob’s request.  In April 2006, Horob’s attorney sent FCS written notice demanding termination of the lien, and FCS refused.  Because FCS refused to release its lien on the cattle, Dakota Community Bank found Horob was in default under the terms of their security agreement and refused to advance Horob any further credit. 

[¶7] In 2007, Horob sued FCS, seeking damages and an order releasing the lien.  Horob claimed FCS wrongfully refused to release the lien on his cattle and continued the lien falsely, maliciously and not in good faith.  Horob alleged the continued lien was a slander of title on his livestock and on any livestock he purchases in the future and was an abuse of process causing irreparable harm, damage and injury.  

[¶8] On July 23, 2008, Horob served discovery requests on FCS.  On August 22, 2008, FCS responded, asking whether Horob wanted the entire 1,291 page file.  On September 8, 2008, Horob confirmed he wanted the entire file.  On September 10, 2008, FCS filed a motion for summary judgment.  Horob received the file from FCS on September 24, 2008.  Horob filed a response to the motion for summary judgment on October 14, 2008, and requested a continuance to allow further discovery.  FCS filed a reply on October 24, 2008.  

[¶9] After a December 4, 2008, hearing, the district court granted FCS’s motion for summary judgment, determining Horob had sufficient time for discovery, no genuine issues of material fact existed and FCS was entitled to judgment as a matter of law.  The court decided FCS was not required to release the lien on Horob’s cattle because the 2001 security agreement granted FCS a security interest in the collateral to secure the payment of all existing and future loans, because an outstanding debt was owed to FCS and because the agreement did not require the release of the lien on Horob’s cattle when the loan for the two windrowers was paid off.  A judgment was subsequently entered.

II

[¶10] Horob argues the district court erred in granting FCS’s motion for summary judgment because issues of material fact are in dispute.  Horob claims he was not informed the security agreement would secure any existing or future loans, he believed he was securing only the debt associated with the windrowers and he did not intend for his livestock to serve as collateral for existing and future obligations.  He contends the parties’ intent is a material fact in dispute and, therefore, summary judgment was not appropriate.  

[¶11] “[S]ummary judgment is ‘a procedural device for promptly resolving a controversy on the merits without a trial if either party is entitled to judgment as a matter of law, and if no dispute exists as to either the material facts or the inferences to be drawn from the undisputed facts, or if resolving disputed facts would not alter the results.’”  
Schleuter v. Northern Plains Ins. Co., Inc.
, 2009 ND 171, ¶ 6, 772 N.W.2d 879 (quoting 
Farmers Union Mut. Ins. Co. v. Associated Elec. & Gas Ins. Servs. Ltd.
, 2007 ND 135, ¶ 7, 737 N.W.2d 253).  

[¶12] Our standard of review for summary judgment is well-established:

“The party moving for summary judgment has the burden of establishing that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.  In deciding whether the district court appropriately granted summary judgment, this Court views the evidence in the light most favorable to the party opposing the motion, and the opposing party will be given the benefit of all favorable inferences that can reasonably be drawn from the record.  On appeal, we decide ‘whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law.’”

Schleuter
, at ¶ 6 (quoting 
Farmers Union Mut. Ins. Co.
, at ¶ 7).  Whether a district court properly granted summary judgment is a question of law, which we review de novo on the entire record.  
Schleuter
, at ¶ 6.

[¶13] The security agreement states that the debtor, which includes Horob, grants to FCS a security interest in the collateral, which includes “all livestock and poultry,” to secure the payment and performance of the obligations.  The agreement defines obligations as: 

“(a) all existing and future loans, advances, indebtedness and payment and performance obligations owed or owing to [FCS] arising out of existing or future credit granted by [FCS] to Debtor (or any of them, if more than one), to Debtor and another, to another guaranteed or endorsed by Debtor, or to another designated by Debtor, whether direct or indirect, absolute or contingent, including both consumer and commercial credit, and both long-term and short-term credit; and (b) all existing and future payment and performance obligations of Debtor arising out of this Agreement . . . .”

[¶14] Horob claims the security agreement contains an unenforceable dragnet clause.  In support of his argument, Horob relies on caselaw and other authority addressing dragnet clauses in mortgages.  However, the security agreement at issue here is not a mortgage.  Therefore, the authority Horob cites does not apply.  

[¶15] The security agreement is subject to the statutory requirements of N.D.C.C. ch. 41-09, which are part of North Dakota’s codification of the Uniform Commercial Code.  N.D.C.C. § 41-09-09(1).  Under the Uniform Commercial Code, a security agreement may create a security interest in after-acquired collateral and may provide that the collateral secures future advances or other value.  N.D.C.C. § 41-09-14. Section 41-09-14(3), N.D.C.C., provides that collateral may secure future as well as past or present advances under the terms of a security agreement.  
See
 Unif. Commercial Code § 9-204 cmt. 5, 3 U.L.A. 136 (2000).  This provision specifically authorizes “‘cross-collateral’ clauses under which collateral acquired at any time[, including existing and future assets, and will] secure[ ] advances whenever made.”  
Id.
 at cmt. 2.  “[P]arties are free to agree that a security interest secures any obligation whatsoever.”  
Id.
 at cmt. 5.  We conclude the cross-collateral clause of the security agreement in this case is valid and enforceable. 

[¶16] Determining what obligations are secured by the collateral listed in a security agreement is a “matter of construing the parties’ agreement under applicable law.”  Unif. Commercial Code § 9-204 cmt. 5, 3 U.L.A. 136.  “The language of a contract is to govern its interpretation if the language is clear and explicit and does not involve an absurdity.”  N.D.C.C. § 9-07-02.  We have stated:

“Written contracts are construed to give effect to the parties’ mutual intention when the contract was formed, and if possible, we look to the writing alone to determine the parties’ intent.  The interpretation of a written contract is a question of law, if the parties’ intent can be determined from the language of the writing alone.  Whether a written contract is ambiguous is a question of law, which we review independently.  A written contract is ambiguous if rational arguments can be made for different interpretations.  If a written contract is ambiguous, extrinsic evidence may be considered to determine the parties’ intent, and the terms of the contract and the parties’ intent are questions of fact.  If a written contract is unambiguous, however, extrinsic evidence is not admissible to contradict the written language.”

Doeden v. Stubstad
, 2008 ND 165, ¶ 14, 755 N.W.2d 859 (citations omitted).

[¶17] Horob argues it was not his intent for the cattle to be used as security for any loan other than the loan for the windrowers.  “The law attaches consequences to unambiguous written documents regardless of the parties’ secret intent.”  
Doeden
, 2008 ND 165, ¶ 17, 755 N.W.2d 859.  A party may not use extrinsic evidence to directly contradict express, unambiguous terms of a security agreement.  
Production Credit Ass’n of Fargo v. Ista
, 451 N.W.2d 118, 126-27 (N.D. 1990).  Here, the agreement expressly provides that the collateral, including Horob’s cattle, secures the payment of the obligations, which is specifically defined and includes “all existing and future loans.”  We conclude this provision of the security agreement is unambiguous and extrinsic evidence may not be admitted to contradict the written language.  
Cf.
 
Pride Hyundai, Inc. v. Chrysler Fin. Co., L.L.C.
, 369 F.3d 603, 616 (1st Cir. 2004) (applying Massachusetts law, concluding text of dragnet clause was unambiguous and evidence of a party’s subjective intent could not alter its plain meaning).  

[¶18] Horob does not dispute that the 1997 loan he received from FCS was outstanding at the time he brought this action. The security agreement is enforceable and unambiguous, and under its terms the cattle may be used to secure all outstanding existing and future loans, including the 1997 mortgage.  FCS was not required to release the cattle lien, and we conclude FCS is entitled to judgment as a matter of law.

III

[¶19] Horob argues summary judgment was not appropriate because he did not have a reasonable opportunity to conduct discovery and the district court abused its discretion by denying his request for additional time.  Horob contends he did not have enough time to sufficiently review the documents in FCS’s file and respond to the motion for summary judgment because FCS moved for summary judgment on September 10, 2008, and failed to provide its file until September 24, 2008, over thirty days after discovery was due.

[¶20] “Summary judgment is appropriate only after the non-moving party has had a reasonable opportunity for discovery to develop his position.”  
Choice Fin. Group v. Schellpfeffer
, 2006 ND 87, ¶ 9, 712 N.W.2d 855.  Under  N.D.R.Civ.P. 56(f), a court may order a continuance to allow additional discovery before deciding a motion for summary judgment.  Whether a court allows additional time for discovery under N.D.R.Civ.P. 56(f) is within the court’s discretion, and the court’s decision will not be reversed on appeal absent an abuse of discretion.  
Schellpfeffer
, at ¶ 9.  “A court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, or if it misinterprets or misapplies the law.”  
Id.
 (quoting 
Nat’l Bank v. Wald
, 536 N.W.2d 924, 928 (N.D. 1995).

[¶21] The district court found that although discovery was not provided in a timely manner, Horob had sufficient time to review the materials and respond.  The court found Horob had approximately three weeks to review the file before filing a response to FCS’s motion for summary judgment and had several months to review the file before the summary judgment hearing.  Horob provided the court with additional materials the day before the hearing and asked that they be considered in opposition to FCS’s motion.  But the documents did not contain any of the documents from FCS’s file that Horob had not seen before.  The court also noted the file was provided to Horob’s previous attorney in a separate matter in 2006.  Although we do not condone discovery delays, Horob has not shown he was prejudiced and we conclude the district court did not act in an arbitrary, unreasonable, or unconscionable manner and did not abuse its discretion by denying Horob’s request for additional time to conduct discovery. 

IV

[¶22] Horob contends FCS violated the rules of appellate procedure by including a copy of a newspaper article in its appendix that was not included in the record.  He requests attorney’s fees and double costs.

[¶23] This Court will not consider evidence outside the record.  
Oien v. Oien
, 2005 ND 205, ¶ 11, 706 N.W.2d 81.  “Only items in the record may be included in the appendix.”  N.D.R.App.P. 30 (a)(1).  “The supreme court may take appropriate action against any person failing to perform an act required by rule or court order.”  N.D.R.App.P. 13.  We have discretion in deciding whether to administer sanctions for noncompliance with the Rules of Appellate Procedure.  
Silbernagel v. Silbernagel
, 2007 ND 124, ¶ 21, 736 N.W.2d 441.  

[¶24] FCS included a copy of a document in its appendix that was not part of the record.  Because FCS failed to comply with the rules, sanctions are appropriate.  We therefore decline to award FCS costs on appeal.

V

[¶25] We affirm the judgment, concluding that the district court did not err granting FCS’s motion for summary judgment dismissal and did not abuse its discretion  denying Horob’s request for additional discovery.  We impose sanctions on FCS for violating N.D.R.App.P. 30.  

[¶26] Daniel J. Crothers

Mary Muehlen Maring

Carol Ronning Kapsner

Dale V. Sandstrom

Gerald W. VandeWalle, C.J.