2014 ND 105

**STATE FARM MUTUAL AUTOMO-BILE INSURANCE COMPANY,**
Plaintiff and Appellee

v.

Sandy **GRUEBELE** A.K.A. Sandy Goetz and S.G., and John Allmer, Defendants

**John Allmer, Appellant.**

No. 20130413.

Supreme Court of North Dakota.

May 28, 2014.

Erich M. Grant (argued) and Jason Ray Vendsel (appeared), Wells Fargo Bank Center, Minot, for plaintiff and appellee.

Robert M. Albrecht (argued) and Denise A. Sollund (on brief), Hallock, MN, for appellant.

CROTHERS, Justice.

[¶1] John Allmer appeals a district court judgment granting State Farm Mutual Automobile Insurance Company's motion for summary judgment and denying defendants Sandy Goetz and S.G.'s motion for summary judgment and John Allmer's motion for summary judgment. We affirm.

I

[¶2] On May 15, 2011, S.G.'s 1990 Oldsmobile collided with a motorcycle driven by Allmer. S.G. was fifteen years old at the time. The parties stipulated Allmer suffered significant injuries, had medical expenses in excess of $1 million and continues to incur medical expenses for his care and treatment.

[¶ 3] Goetz, S.G.'s mother, and S.G.'s father are divorced. S.G.'s father owned and insured the Oldsmobile S.G. was driving, although S.G. had exclusive possession of the car for six months prior to the accident. Her father's policy had an underlying liability limit of $250,000 and an umbrella policy of $1 million, which her father's insurance company offered in settlement of the claims against him. Goetz had an insurance policy with State Farm that listed Goetz and her 2002 Pontiac Grand Prix as covered under the policy. Goetz signed S.G.'s driver's license application sponsorship form for drivers under the age of eighteen, assuming financial liability for S.G.'s negligent acts arising from operation of a motor vehicle under sections 39–06–08 (2011) and 39–06–09 (2011), N.D.C.C.[1]

[¶ 4] State Farm filed a motion for summary judgment, arguing no dispute existed that S.G.'s vehicle was not covered under Goetz's policy. Goetz and S.G. filed a motion for summary judgment and Allmer filed a motion for summary judgment, arguing the language in State Farm's insurance policy should be construed to provide coverage for the accident. State Farm did not dispute Goetz was liable for S.G.'s negligent acts; therefore, the district court addressed only whether State Farm's policy provided coverage for the claim. The district court found for the purposes of Goetz's policy that S.G. was considered a "resident relative" and S.G.'s Oldsmobile was a "non-owned" vehicle. The district court determined under section 39–16.1–11, N.D.C.C., Goetz's policy was an owner's policy of liability insurance, specifically listing the covered drivers and vehicles on the policy's declarations page.

The district court also determined State Farm was not required to cover S.G.'s Oldsmobile because the vehicle was not designated on the policy. The district court granted State Farm's motion for summary judgment, and denied Goetz and S.G.'s motion for summary judgment and Allmer's motion for summary judgment. Allmer appealed.

## II

[¶ 5] "Whether summary judgment was properly granted is 'a question of law which we review de novo on the entire record.'" *Zuger v. State*, 2004 ND 16, ¶ 7, 673 N.W.2d 615 (citation omitted). Summary judgment:

> " 'is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no disputed issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law.' Evidence presented on a motion for summary judgment is viewed in the light most favorable to the party opposing the motion, and that party is given the benefit of all favorable inferences which reasonably can be drawn from the evidence. Summary judgment is appropriate 'against a party who fails to establish the existence of a factual dispute as to an essential element of his claim and on which he will bear the burden of proof at trial.' A party seeking summary judgment has the initial burden of showing that no dispute exists as to either material facts or inferences to be drawn from undisputed facts and that the movant is entitled to judgment as a matter of law.

---

1. According to legislative history, sections 39–06–08, 39–06–09 and 39–06–10, N.D.C.C., were updated effective July 1, 2013 to clarify their language without making substantive changes. *Hearing on S.B.2039 Before Senate Transportation Comm.*, 63rd N.D. Legis. Sess. (Jan. 10, 2013) (testimony of Gary A. Lee, Sen.). The complaint in this case was filed June 6, 2012, and this case is governed by the statutes effective at that time.

If the movant meets that initial burden, the opposing party may not simply rely upon the pleadings or upon unsupported conclusory allegations, but 'must present competent admissible evidence by affidavit or other comparable means which raises an issue of material fact and must, if appropriate, draw the court's attention to relevant evidence in the record by setting out the page and line in depositions or other comparable documents containing testimony or evidence raising an issue of material fact.' "

*Perius v. Nodak Mut. Ins. Co.*, 2010 ND 80, ¶ 9, 782 N.W.2d 355 (internal citations omitted). "The interpretation of an insurance policy is a question of law, fully reviewable on appeal." *Close v. Ebertz*, 1998 ND 167, ¶ 12, 583 N.W.2d 794.

### III

■ [¶ 6] Allmer argues under section 39–06–09 (2011), N.D.C.C., that Goetz's signature on S.G.'s sponsorship form for her driver's license application imputed S.G.'s negligence to Goetz and created coverage for S.G.'s accident under Goetz's insurance policy. Section 39–06–09 (2011), N.D.C.C., states:

"Any negligence of a minor when driving a motor vehicle upon a highway must be imputed to the person who has signed the application of such minor for a permit or license, which person must be jointly and severally liable with such minor for any damages caused by such negligence, except as otherwise provided in section 39–06–10."

Section 39–06–10 (2011), N.D.C.C., states:

"If a minor deposits or there is deposited for the minor proof of financial responsibility for the operation of a motor vehicle owned by the minor, or for the operation of any motor vehicle, as required under the motor vehicle financial responsibility laws of this state, then the director may accept the application of the minor."

Allmer bases his argument on these statutes, as applied in *Anderson v. Anderson,* 1999 ND 57, 591 N.W.2d 138, and on *Rogers v. MFA Mut. Ins. Co.*, 262 Ark. 55, 554 S.W.2d 327 (1977).

[¶ 7] In *Anderson,* this Court answered the certified question of law from a federal court: "Whether the negligence of a minor driver is imputed to an injured passenger under section 39–06–09, N.D.C.C., when the injured passenger is the parent who signed the minor driver's application for an instructional permit, in accordance with section 39–06–08, N.D.C.C." *Anderson,* 1999 ND 57, ¶ 1, 591 N.W.2d 138. This Court held that "by its terms, N.D.C.C. § 39–06–09 requires the imputation of all negligence, not solely financial liability, to the signing parent or guardian." *Anderson,* at ¶ 9.

[¶ 8] Here, State Farm did not dispute that negligence may be imputed to Goetz by virtue of section 39–06–09 (2011), N.D.C.C. If a parent signs a sponsorship form and the statutory exception does not apply, the parent will have the minor's negligence imputed to his or herself. *See Anderson,* 1999 ND 57, ¶ 9, 591 N.W.2d 138; N.D.C.C. §§ 39–06–09 (2011) and 39–06–10 (2011). Goetz signed S.G.'s driver's license application sponsorship form, thereby creating the basis for imputing S.G.'s negligence to herself. The question here, then, is whether Goetz's State Farm automobile insurance policy provides coverage for the negligence imputed to Goetz. We analyze this question in terms of whether Goetz's policy would provide coverage for her "stand[ing] in exactly the same position as [S.G.] and [ ] clothed with the imputation of negligence for all purposes." *See McCants v. Chenault,* 98 Ohio App. 529, 130 N.E.2d 382, 383 (1954) (denying compensation to a father whose mi-

nor son crashed his vehicle because the son was guilty of negligence proximately causing the accident and the son's negligence was statutorily imputed to the father when he signed his son's application for a driver's license).

[¶ 9] "We look first to the language of the insurance contract, and if the policy language is clear on its face, there is no room for construction." *Schleuter v. Northern Plains Ins. Co., Inc.*, 2009 ND 171, ¶ 8, 772 N.W.2d 879 (citation omitted). Goetz's insurance policy includes a declarations page issued by State Farm. The declarations page names the insured as Goetz and lists a 2002 Pontiac Grand Prix as her vehicle. The declarations page does not list any other names or vehicles, but provides Goetz's specific coverage. Goetz's policy defines the "insured" as:

"1.   you and resident relatives for:

a.   the ownership, maintenance, or use of:

   (1)  your car;

   (2)  a newly acquired car; or

   (3)  a trailer; and

b.   the maintenance or use of:

   (1)  a non-owned car; or

   (2)  a temporary substitute car[.]"

Goetz's policy also states:

"1.   We will pay:

a.   damages an insured becomes legally liable to pay because of:

   (1)  bodily injury to others; and

   (2)  damage to property

   caused by an accident that involves a vehicle for which that insured is provided Liability Coverage by this policy[.]"

[¶ 10] In determining whether Goetz would be covered under her insurance policy standing in S.G.'s shoes and driving S.G.'s Oldsmobile, the question is whether the Oldsmobile qualifies under Goetz's pol-icy as your car, a newly acquired car, a trailer, a non-owned car or a temporary substitute car. Your car is defined as "the vehicle shown under 'your car' on the Declarations Page." S.G.'s Oldsmobile is not listed on the declarations page and, there-fore, is not a qualifying car under the your car category. A newly acquired car ceases to be newly acquired on the effective date of a policy describing the car or at the end of the fourteenth calendar day following the delivery of the car, whichever comes first. The parties agree S.G. had posses-sion of her Oldsmobile for six months prior to the accident; therefore, S.G.'s Oldsmo-bile is not a newly acquired car. Nobody disputes S.G.'s Oldsmobile was not a quali-fying trailer or a temporary substitute car.

[¶ 11] The only remaining category S.G.'s Oldsmobile could possibly fall under for the purposes of Goetz's policy is a non-owned car, defined as:

"a car that is in the lawful possession of you or any resident relative and that neither:

1.   is owned by:

a.   you;

b.   any resident relative;

c.   any other person who resides pri-marily in your household; or

d.   an employer of any person de-scribed in a., b., or c. above; nor

2.   has been operated by, rented by, or in the possession of:

a.   you; or

b.   any resident relative

during any part of each of the 31 or more consecutive days imme-diately prior to the date of the accident or loss."

Although S.G.'s Oldsmobile was not owned by Goetz or S.G., it was in S.G.'s posses-sion for six months prior to the accident. On that fact, the question is whether Goetz

would be covered under the non-owned car provision of her insurance policy if she stood in the same position as S.G., driving a vehicle that was not owned by her for more than thirty-one days immediately prior to an accident. In that situation, Goetz's liability coverage would not include the vehicle as a non-owned car because the Oldsmobile would have been in Goetz's possession for more than thirty-one consecutive days immediately prior to the accident. Therefore, even if S.G.'s negligence is fully imputed to Goetz, Goetz's insurance policy does not provide coverage for the accident.

[¶ 12] The federal district court reached a similar result in a case applying North Dakota law where a minor driver was involved in an accident while driving his father's car. *American Family Mut. Ins. Co. v. Jones*, No. 3:05–cv–93, 2008 WL 4457696, at *1 (D.N.D. Sept. 30, 2008). Similar to this case, his parents were not married to each other and he was considered a resident of his mother's household. *Id.* at *7. The father's insurance company assumed liability, but the injured party also sought coverage from the mother's policy. *Id.* at *1. The mother's policy excluded coverage for accidents "arising out of the use of any vehicle, other than [her] insured car, which is owned by or furnished or available for regular use by you or any resident of your household." *Id.* at *2. The district court concluded the mother's policy did not provide coverage for the accident involving the father's car because the child regularly used the father's car, therefore explicitly falling under the exclusion in the mother's policy. *Id.* at *7.

[¶ 13] We also reject Allmer's argument that the Arkansas decision in *Rogers* directs a different result. In *Rogers*, a daughter's negligence was imputed to her father under an Arkansas statute because the father signed his daughter's driver's

license application. 554 S.W.2d at 328–29. There, the driver's parents were divorced, and the father had primary custody of their daughter. *Id.* at 328. The daughter had a car accident while visiting her mother and driving her mother's car. *Id.* The father's insurance policy covered "actual use" of a non-owned automobile. *Id.* at 329–30. The court held actual use encompassed his daughter using her mother's vehicle because the statute imputed liability jointly and severally to the signing parent, placing the parent in the position of the actual user of the automobile. *Id.* at 330.

[¶ 14] In the context of vicarious liability under the family car doctrine, we held *Rogers* was not instructive. *McPhee v. Tufty*, 2001 ND 51, ¶ 31, 623 N.W.2d 390 (holding that under the family car doctrine, liability should not be imposed on an insurer without regard to the coverage defined by the insurance policy). Unlike *McPhee*, this case is factually similar to *Rogers* because Allmer argues for coverage under section 39–06–09 (2011), N.D.C.C., which, like the Arkansas statute, imputes negligence to a signing parent. However, despite the factual similarities to this case, *Rogers* has an important distinction. In *Rogers*, explicit language in the father's insurance policy covered actual use of a non-owned automobile, and the court determined the mother's car was a qualifying non-owned automobile. 554 S.W.2d at 329–30. While Goetz's policy covers use of a qualifying non-owned vehicle, S.G.'s Oldsmobile is not a non-owned vehicle under Goetz's policy. Therefore, even if S.G.'s negligence is imputed to Goetz, the State Farm policy does not provide coverage for that negligence.

[¶ 15] To the extent Goetz assumed liability for S.G.'s negligence by signing her driver's license application sponsorship form, Goetz's signature would

not create liability coverage for S.G.'s Oldsmobile under Goetz's insurance policy when it would not afford Goetz herself coverage standing in S.G.'s place. Under North Dakota's statutory structure (which we invite the legislature to examine), negligence imputed to a parent after signing their minor child's driver's license application sponsorship form is a separate consideration than the scope of coverage under the signing parent's insurance contract.

## IV

[¶ 16] Allmer asserts Goetz's policy is required to provide coverage for S.G.'s Oldsmobile because it is an "owner-operator policy." State Farm asserts Goetz's policy does not provide coverage for S.G.'s Oldsmobile because it is an "owner's policy." We conclude their arguments based on the names or general types of insurance policies are not determinative of the controversy. Rather, the relevant insurance policy language and financial responsibility laws control.

[¶ 17] North Dakota's financial responsibility laws classify motor vehicle liability policies as owner's policies or operator's policies. N.D.C.C. § 39–16.1–11. Section 39–16.1–11(2)(a), N.D.C.C., states that owner's policies "[m]ust designate by explicit description or by appropriate reference all motor vehicles with respect to which coverage is thereby to be granted[.]" Section 39–16.1–11(3), N.D.C.C., states that operator's policies "must insure the person named as insured therein against loss from the liability imposed upon the person by law for damages arising out of the use by the person of any motor vehicle, either unlimited, or limited by excluding certain classes or types of motor vehicles . . . ."

[¶ 18] From the plain language of the owner's and operator's statutes, Goetz's policy is an owner's policy. Specifically, the most basic level of coverage in each type of policy is different; one policy covers the use of a particular car and the other covers use of any car. The statutes show that owner's policies can be expanded by incorporating additional covered categories. Operator's policies may limit coverage by excluding certain classes or types of motor vehicles. The State Farm policy here explicitly lists Goetz and her vehicle as covered by the policy and also provides broader but limited coverage by designating several other narrow categories of covered vehicles. Goetz's policy is an owner's policy and, as previously discussed, does not extend coverage to S.G.'s Oldsmobile.

[¶ 19] Allmer asserts the policy must be an owner-operator hybrid because State Farm's agent testified she believed Goetz had an owner-operator policy. Allmer's argument that the State Farm agent's testimony should supersede the clear insurance policy language is contrary to our law on insurance contract interpretation. *Schleuter*, 2009 ND 171, ¶ 8, 772 N.W.2d 879 ("We look first to the language of the insurance contract, and if the policy language is clear on its face, there is no room for construction.") (citation omitted). Further, the agent herself stated she did not understand the difference between owner's policies and operator's policies, indicating her opinion on the matter is neither instructive nor controlling for determining the policy's type.

## V

[¶ 20] The clear language of Goetz's insurance policy indicates it is an owner's policy excluding coverage for S.G.'s Oldsmobile. Section 39–06–09 (2011), N.D.C.C., does not provide Goetz coverage under these facts for negligence imputed to her by S.G.'s operation of the Oldsmobile. The district court did not err by granting summary judgment in favor of

State Farm because no genuine issue of material fact existed, and State Farm was entitled to judgment as a matter of law. We affirm.

[¶ 21] GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.